# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| JOHN ANTHONY ABLE, ) | |
|   Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 1:14cv00071 |
| ) | |
| CAROLYN W. COLVIN, ) | **MEMORANDUM OPINION** |
|   Acting Commissioner of ) | |
|   Social Security, ) | BY: PAMELA MEADE SARGENT |
|     Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, John Anthony Able, ("Able"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer based on consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may

be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Able protectively filed his application for DIB on March 28, 2011, alleging disability as of November 1, 2009, due to back and knee pain, gout, neuropathy, diabetes, arthritis in hips and right wrist, broken left shoulder, heart attack and hypertension. (Record, ("R."), at 219-20, 226, 229.) The claim was denied initially and on reconsideration. (R. at 100-05, 113-16.) Able then requested a hearing before an administrative law judge, ("ALJ"), (R. at 123), and a hearing was held on June 17, 2013, at which Able was represented by a non-attorney representative. (R. at 35-75.)

By decision dated June 25, 2013, the ALJ denied Able's claim. (R. at 19-30.) The ALJ found that Able met the nondisability insured status requirements of the Act for DIB purposes through June 30, 2013.[1] (R. at 21.) The ALJ also found that Able had not engaged in substantial gainful activity since November 1, 2009, his alleged onset date. (R. at 21.) The ALJ found that the medical evidence established that Able suffered from severe impairments, namely diabetes with peripheral neuropathy, hypertension, degenerative disc disease, obesity, dyslipidemia and history of coronary artery disease, but he found that Able did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21-22.) The ALJ

---

[1] In order to be eligible for disability benefits, Able must prove disability between November 1, 2009, the alleged onset date, and June 25, 2013, the date of the ALJ's decision.

found that Able had the residual functional capacity to perform a range of light work[2] that would allow him to sit for two hours throughout the work day, required no exposure to hazardous machinery, unprotected heights or climbing of ladders, ropes and scaffold or driving and no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling and occasional exposure to temperature extremes, wetness, humidity and excessive vibration. (R. at 22-28.) The ALJ found that Able was able to perform his past relevant work as a cashier. (R. at 28-29.) The ALJ also found that other jobs existed in the national economy that Able could perform, including jobs as a ticket taker, a mail routing clerk and a gate guard. (R. at 28-29.) Therefore, the ALJ found that Able was not under a disability as defined by the Act and was not eligible for DIB benefits through the date of the decision. (R. at 30.) *See* 20 C.F.R. § 404.1520(f), (g) (2015).

After the ALJ issued his decision, Able pursued his administrative appeals, (R. at 13-14), but the Appeals Council denied his request for review. (R. at 1-4.) Able then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2015). The case is before this court on Able's motion for summary judgment filed June 3, 2015, and the Commissioner's motion for summary judgment filed June 30, 2015. Oral argument has not been requested; therefore, the matter is ripe for decision.

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2015).

*II. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2015); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2015).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason

or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his findings.

Able argues that the ALJ erred by improperly assessing his credibility under *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). (Plaintiff's Brief In Support Of Summary Judgment, ("Plaintiff's Brief"), at 2-4.) Able also argues that the ALJ erred by finding that a significant number of jobs exist in the national economy that Able could perform, thereby making him ineligible for disability benefits. (Plaintiff's Brief 4-9.) In particular, Able claims that the hypothetical presented to the vocational expert did not take into account his need to urinate frequently. (Plaintiff's Brief at 4-9.)

In *Mascio v. Colvin*, 780 F.3d at 639, the Fourth Circuit held that the ALJ erred by determining the claimant's residual functional capacity before assessing the claimant's credibility with regard to the claimant's subjective complaints and alleged functional limitations. The Fourth Circuit held that the ALJ who had decided Mascio's claim had gotten "things backwards" by first determining Mascio's residual functional capacity, then using that finding to determine his credibility. *Mascio*, 780 F.3d at 639. The court held that the Social Security Regulations require an ALJ to "'determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her]

ability to work.'" *Mascio*, 780 F.3d at 639 (quoting 20 C.F.R. § 416.929(a)). While Mascio's claim was for supplemental security income, ("SSI"), the same requirements exist in the Regulations governing DIB claims. *See* 20 C.F.R. § 404.1529(a) (2015).

The Fourth Circuit held that the ALJ's error was reflected in "boilerplate" language used by him. The ALJ had written:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Mascio*, 780 F.3d at 639. The court further held that use of this language would have been harmless, if the ALJ had properly analyzed the claimant's credibility elsewhere, which he did not. *See Mascio*, 780 F.3d at 639.

In this case, a review of the ALJ's opinion shows that he addressed the issue of Able's credibility as required by the Regulations and the Fourth Circuit's opinion in *Mascio*. In particular, the ALJ spent more than five pages of his opinion analyzing whether the medical evidence of record supported Able's subjective complaints. (R. at 23-28.) In the end, the ALJ found that Able's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely credible…." (R. at 26-27.) In particular, the ALJ found that Able's statement that he would travel with friends indicated a greater ability to sit for extended periods of time than he alleged. (R. at 27.) He also found that Able's

allegations that he had no feeling in his hands, arms, feet and legs were not supported by medical evidence. (R. at 27.) The ALJ further found that Able's allegations that he passed a kidney stone every three days and urinated at least 40 times a day simply were not supported by the medical evidence. (R. at 27.) The ALJ concluded: "The credibility of the claimant's allegations is weakened by inconsistencies between the extent of his allegations and the objective medical evidence. The claimant does experience some limitations but only to the extent described in the residual functional capacity above." (R. at 28.)

Furthermore, I find that the ALJ's findings as to Able's credibility and his residual functional capacity are supported by substantial evidence in the record. In particular, the medical evidence shows that on November 4, 2009, three days after Able's alleged onset date of disability, he reported that he had passed his Department of Transportation, ("DOT"), physical a few days prior and was working driving a truck out of town on a regular basis. (R. at 475.) Approximately three months later, on February 18, 2010, Able stated that he "drives a truck; he is out of town most of the time." (R. at 469.) On July 31, 2012, Able saw his primary care physician for completion of a DOT physical. (R. at 830-33, 840-41.) A health history section, completed and signed by Able, indicated that he had no issues with his kidneys, back pain, fainting or impaired hands and feet. (R. at 830.) On October 4, 2012, Able called his physician's office and requested a letter stating that his physician was aware of the medications he was taking and that they should not affect his driving ability. (R. at 822-23.) A January 30, 2013, office note reflects that Able stated that he was resistant to taking Insulin for his diabetes because he "drives a truck." (R. at 811.)

The record does reveal that Able has sought treatment in an emergency room on occasion for kidney stones. (R. at 548-51, 553, 557-60, 702-10, 750-54, 781-86.) While the notes of these visits state that Able has claimed to have passed numerous kidney stones, there is no report that he complained of urinating at least 40 times a day. (R. at 548-50, 557-60, 702-10, 750-54, 781-86.) At most there is a complaint of "frequency." (R. at 812.) On October 12, 2012, Able specifically denied any problems with urinary frequency or urge to urinate. (R. at 816.) A CT scan performed on October 15, 2010, noted only one kidney stone in Able's left kidney. (R. at 553.) An ultrasound performed on October 24, 2012, showed stones in both kidneys. (R. at 764, 770-71.) Although he was referred to a urologist for treatment, (R. at 557), there is no evidence that he ever saw this specialist, as he likely would have done if his urological symptoms were as severe as he claims.

For the above-stated reasons, I also reject Able's argument that the ALJ erred by not including Able's allegation of a need to urinate at least 40 times a day in his hypothetical to the vocational expert.

Based on the above-stated reasons, I find that substantial evidence supports the ALJ's decision denying benefits. I will deny Able's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the decision of the Commissioner denying benefits. An appropriate Order and Judgment will be entered.

ENTERED: March 21, 2016.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE